150 675|
f154 619|

PEOPLE, *for use of* DAVIS, *v.* CAMPFIELD.

1. PUBLIC WORKS — CONTRACTS — BONDS — RIGHTS OF SUBCON-
   TRACTORS.

   A subcontractor has no right of action on a bond given by a
   public contractor under sections 10743–10745, 3 Comp. Laws,
   to secure laborers and materialmen.

2. SAME—SUBCONTRACTORS—MATERIALMEN—DISTINCTION.

   One who furnishes materials to a contractor is not a subcon-
   tractor unless he agrees that the original contract shall be
   the standard by which the performance of his contract shall
   be judged.

3. SAME.

   One who agrees to furnish a public building contractor with a
   certain style of sash stiffeners known to the trade, according
   to measurements to be furnished by the contractor, is a ma-
   terialman and not a subcontractor, though the style of the
   sash stiffeners is named in the original contract and specifi-
   cations.

4. APPEAL AND ERROR — REVIEW — ERRORS NOT AFFECTING RE-
   SULT.

   Alleged errors in rulings resulting in a determination that an
   obligation to furnish certain materials for a building was
   imposed upon the contractor by his contract will not be re-
   viewed where it should be held, as a matter of law, that the
   obligation was so imposed.

Error to Washtenaw; Kinne, J. Submitted October
15, 1907. (Docket No. 71.) Decided January 31, 1908.

Assumpsit by the people of the State of Michigan, for
the use and benefit of Robert J. Davis, against Edwin
M. Campfield and the Title Guaranty & Trust Company
upon a statutory bond. There was judgment for plaintiff,
and defendants bring error. Affirmed.

*Henry B. Graves*, for appellants.

*Thomas D. Kearney*, for appellee.

CARPENTER, J.   Plaintiff recovered a verdict and judgment in the circuit court against defendant, the obligor in a certain bond executed in conformity with sections 10743–10745, 3 Comp. Laws, for certain sash stiffeners used in constructing the Ann Arbor high school building. Defendant Campfield had the contract to do the carpenter work on said building and it is settled by the verdict of the jury that the stiffeners in controversy were furnished in pursuance of a contract made by him with relator.

*First.* It is insisted that the trial court erred in not directing a verdict for defendants on the ground that relator was a subcontractor. If he was a subcontractor, it is settled that he has no right of action on the bond in suit. *Avery* v. *Board of Sup'rs of Ionia Co.*, 71 Mich. 538; *People, for use of Winkle Terra-Cotta Co.*, v. *Cotteral*, 119 Mich. 27.

Was he a subcontractor? According to his testimony, which, for the purpose of this case, we must assume to be true, relator agreed to furnish the stiffeners for all the window sashes in the building at $1.50 per window. He was not to install these stiffeners, but he had to make them, and to make them, not in accordance with the specifications for that contract (indeed those specifications which relator had seen merely provided for "Davis or other equal steel stiffeners"), but to make them in accordance with measurements furnished him by a subcontractor to whom defendant Campfield had sublet the work of putting in the window sash, and to whom Campfield had referred him. It is to be inferred from his testimony that relator would comply with his contract if he furnished stiffeners which conformed to these measurements, though they did not conform to the contract between the principal contractor and the board of education. This circumstance distinguishes the case from *Avery* v. *Board of Sup'rs of Ionia Co.*, and *People, for use of Winkle Terra-Cotta Co.*, v. *Cotteral*, supra. In each of those cases the person adjudged to be a subcontractor bound himself to perform in accordance with the original con-

tract, and that is why he was held to be a subcontractor.
This is to be necessarily inferred from the opinion in the
*Cotteral Case,* and it is expressly stated in the opinion in
the *Avery Case,* in these words:

"The subcontractor is an under contractor,—one who
takes under the original contract, *and is to perform in
accordance with the original contract.*"

Under this definition, which we think correct, we de-
termine whether a person furnishing material is a sub-
contractor under sections 10743–10745 by this test, viz.,
Has he agreed that the original contract shall be the
standard by which the performance of his contract shall be
judged? If he has, he is a subcontractor and cannot re-
cover on the statutory bond. If he has not made that agree-
ment, he is an ordinary materialman and can recover.
Under this definition, and according to this test, a manu-
facturer who agrees to furnish the doors and sashes for a
building in accordance with the terms of the original con-
tract is a subcontractor, while if he merely agrees to fur-
nish them in accordance with certain measurements, he
is a materialman. The question may be asked: Will you
classify as a materialman or as a subcontractor one who
furnishes articles under a contract made by him in entire
ignorance of the terms of the original contract, but which
does in fact conform precisely to those terms? In such
cases it is true that the fulfillment of his contract is at the
same time the fulfillment of the original contract, and
thus the original contract becomes the standard by which
the performance of his contract is judged. I answer that
he is none the less a materialman, because he has not
agreed that the original contract shall be the standard,
and, so far as he is concerned, its becoming such is a mere
incident. Whether or not he is a subcontractor depends
on his contract, and not upon a contract of which he is
ignorant. He cannot become a subcontractor unless he
contracted to become such. But the difficulty suggested
by these cases will rarely be encountered, for such cases

will seldom arise. Generally speaking, the distinction between the obligation of the subcontractor and that of the materialman, under the test approved in this opinion, will be clear. Almost all contracts for the erection or repair of public buildings impose on the principal contractor an obligation, and this becomes an obligation of a subcontractor, to furnish material or articles which not only conform to the contract, but which will satisfy the honest judgment of the architect in charge, while the materialman discharges his obligation by furnishing articles which conform to his contract. Under the reasoning of this opinion, relator was not a subcontractor. For, as already shown, defendant Campfield could not have rejected the stiffeners merely because they did not conform to the original contract.

*Second.* It was determined in the lower court that the obligation to furnish the stiffeners in suit was imposed upon defendant Campfield by his contract to do the carpenter work. Defendant complains of various rulings which resulted in this determination. It is a sufficient answer to all these complaints to say that it should be held as a matter of law that his contract did impose that obligation on defendant Campfield. Those stiffeners were, as already stated, distinctly referred to in the specifications for the carpenter work, and it is to be presumed that his contract, which is not a part of the bill of exceptions, required defendant Campfield to do the work mentioned in the specifications.

The judgment should be affirmed.

OSTRANDER, HOOKER, MOORE, and MCALVAY, JJ., concurred.